Fee Paid

1

**VALLE MAKOFF LLP**
JEFFREY B. VALLE (State Bar No. 110060)

2
   jvalle@vallemakoff.com
KATHERINE BALATBAT (State Bar No. 196758)

3
   kbalatbat@vallemakoff.com
11911 San Vicente Blvd., Suite 324

4
Los Angeles, California 90049
Telephone:   (310) 476-0300

5
Facsimile:   (310) 476-0333

6

Attorneys for Relator

7

8
### UNITED STATES DISTRICT COURT

9
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11
UNITED STATES OF AMERICA, ex. rel. [UNDER SEAL],

12
                    Plaintiff,

13

14
         v.

15
[UNDER SEAL],

16
                    Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Case No.   CV20-1795 SVW (GJSx)

***QUI TAM* COMPLAINT FOR DAMAGES AND PENALTIES FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**

**FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**JURY TRIAL DEMANDED**

**VALLE MAKOFF LLP**
JEFFREY B. VALLE (State Bar No. 110060)
  jvalle@vallemakoff.com
KATHERINE BALATBAT (State Bar No. 196758)
  kbalatbat@vallemakoff.com
11911 San Vicente Blvd., Suite 324
Los Angeles, California 90049
Telephone:   (310) 476-0300
Facsimile:   (310) 476-0333

Attorneys for Relator Kukdong Corp.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <u>ex. rel.</u> KUKDONG CORP., a Korean corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>DREAM APPAREL, INC., a California corporation; and JAMES J. LEE, an individual,<br><br>              Defendants. | Case No.<br><br>***QUI TAM* COMPLAINT FOR DAMAGES AND PENALTIES FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**<br><br>**FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff-Relator Kukdong Corp. (the "Relator" or "Kukdong"), through its attorneys, on behalf of the United States of America (the "Government" or the "Federal Government"), for its Complaint against defendants Dream Apparel, Inc. ("Dream Apparel"), and James J. Lee ("Lee") (collectively, "Defendants") alleges based upon personal knowledge, relevant documents, and information and belief, as follows:

## INTRODUCTION

1.     Over the past twenty years, Defendant Dream Apparel has imported apparel worth approximately $500 million that was manufactured overseas to sell in the United States.  The ultimate customers for its imports were Walmart, Kohl's, JC Penney and other retailers.  Between 2011 and 2017, Relator manufactured approximately $48 million of the apparel imported by Dream Apparel into the United States.

2.     In 2018, Relator filed a lawsuit against Defendants in Los Angeles Superior Court to recover monies they owed to Relator for apparel manufactured and shipped in 2016 and 2017 (the "State Action").  In the State Action, Relator obtained compelling non-public evidence of Defendants' fraudulent scheme to avoid paying customs duties.

3.     Over the past twenty years, Defendants intentionally submitted false invoices to U.S. Customs and Border Protection undervaluing the apparel being imported so they could wrongly reduce the amount of customs duties, taxes and fees owed.  For just the three-year period of 2015-2017, Defendants understated the price of the apparel they imported by at least $18.7 million, cheating the Federal Government out of at least $4.2 million in duties.

4.     This is a *qui tam* action for violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, to recover treble damages, civil penalties, and attorneys' fees and costs for Relator and on behalf of the United States for Defendants' fraudulent scheme.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the United States' claims

3

*Qui Tam* Complaint

brought under the False Claims Act, 31 U.S.C. § 3279 *et seq.,* pursuant to U.S.C. §§ 3730(b) and 3732(a).

6.      This Court has personal jurisdiction and venue pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and 1395(a).  Defendant Dream Apparel's principal place of business is in Los Angeles, and Defendant James J. Lee resides in Los Angeles.

## PARTIES

7.      Kukdong Corp. (the "Relator" or "Kukdong"), is the Plaintiff in this action for itself and for the United States, 31 U.S.C. §3730(b)(1).  Kukdong is a Korean apparel manufacturer.  Kukdong has direct and independent knowledge of the information on which these allegations are based.

8.      Defendant Dream Apparel, Inc. ("Dream Apparel") is now, and at all times mentioned herein was, a California corporation organized and existing under the laws of the State of California, having its principal place of business in Los Angeles, California.

9.      Defendant James J. Lee ("Lee"), an individual, is, and at all relevant times hereto was, a resident of Los Angeles County.  At all relevant times hereto, Lee was and is the sole shareholder and President of Dream Apparel.

## IMPORTERS ARE REQUIRED TO SUBMIT TRUE AND CORRECT INVOICES TO U.S. CUSTOMS FOR THE PURPOSE OF CALCULATING CUSTOMS DUTIES

10.      Importers have an existing, non-contingent and nondiscretionary liability for customs duties.  Such liability arises immediately and automatically upon the importation of goods into the United States.  19 U.S.C. § 1484 requires importers to enter merchandise with the U.S. Customs and Border Protection ("Customs") to enable Customs, inter alia, to properly assess duties on the merchandise.  *See also* 19 C.F.R. § 141.4.  The form used to enter merchandise is the CBP Form 7501 ("Entry Summary Form").

4

11.     Importers are required by 19 U.S.C. § 1481(a) to submit commercial invoices to Customs with each shipment that contain a detailed description of the merchandise.  Customs' regulations establish certain requirements for commercial invoices accompanying imported merchandise.  "[I]f the merchandise is shipped in pursuance of a purchase or agreement to purchase," as is the case with the apparel imported by Defendants, the invoice is required to set forth the purchase price of each item.  19 C.F.R. § 141.86(a)(5).  An importer of record or authorized agent must use "reasonable care" in filing entry documents with Customs so that the agency will be able to "properly assess duties on the merchandise."  19 U.S.C. § 1484(a)(1)(B)(i).

12.     As is applicable here, 19 U.S.C. § 1401(a)(1)(A) provides that imported merchandise will be appraised on the basis of transaction value.  The transaction value of imported merchandise is further defined as "the price actually paid or payable for the merchandise when sold for exportation to the United States."  19 U.S.C. § 1401(b)(1).

13.     Providing Customs with a false invoice that understates the value of the merchandise and declaring that value on CBP Form 7501 is a false claim that is actionable under 31 U.S.C. §3729(a)(1)(G) which makes a person liable who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government."

14.     Defendants became liable under 31 U.S.C. § 3729(a)(1)(G) by submitting, or causing to be submitted, false invoices to Customs that understated the value of the merchandise.

15.     Defendants are also liable under 31 U.S.C. § 3729(a)(1)(C) which creates liability for a person who "conspires to commit a violation of subparagraph (A), (B), (C), (D), (E), (F), or (G)."

*Qui Tam* Complaint

**DEFENDANTS DEFRAUDED CUSTOMS BY SUBMITTING FALSE
INVOICES UNDERVALUING THE APPAREL THEY IMPORTED
FOR THE PAST 20 YEARS**

16.    In the past twenty years, Defendant Dream Apparel has imported apparel worth approximately $500 million that was manufactured overseas to sell in the United States.  In 2010 alone, Dream Apparel imported approximately $100 million worth of apparel.  Defendant Dream Apparel maintained business and contractual relationships with several foreign manufacturers, including Relator.

17.    Dream Apparel is solely owned and run by Defendant James Lee.  James Lee has a brother, Sam Lee, who runs a Korean company called SJ Mode.  SJ Mode is Dream Apparel's agent and/or alter ego.  Together, James Lee and Sam Lee, through their companies Dream Apparel and SJ Mode, have defrauded at least three Korean manufacturers, including Relator, out of nearly $20 million by ordering clothing without paying for it by purposely confusing and abusing the entities of Dream Apparel and SJ Mode.

18.    From 2011 to 2017, Relator manufactured and sold approximately $48 million worth of apparel to Defendant Dream Apparel.  Dream Apparel then sold the apparel manufactured by Relator to Dream Apparel's long-time customer E.S. Sutton, a New Jersey corporation.  E.S. Sutton then sold the apparel to Walmart.  In a typical transaction, E.S. Sutton placed a purchase order with Dream Apparel that includes the payment term "landed duty paid."  Dream Apparel relied on SJ Mode to enter into sales contracts with Relator on Dream Apparel's behalf to manufacture the apparel ordered by E.S. Sutton.  Once the apparel was manufactured and shipped, Relator sent an invoice and shipping documents by email to SJ Mode as Dream Apparel's agent.  Relator's invoices reflected the actual purchase price for the apparel being sold to Dream Apparel.

19.    SJ Mode acted as Dream Apparel's agent throughout Dream Apparel's

6

business relationship with Relator, transmitting signed sales contracts to Relator, coordinating shipment details, providing a sjmode email address for Relator to use for communication, forwarding invoices to Dream Apparel, creating invoices for Dream Apparel to send to its buyer E.S. Sutton and transmitting invoices and shipping documents to Dream Apparel's customs broker.

20.     After receiving Relator's invoice and shipping documents, SJ Mode then created a new invoice, or in some cases multiple invoices, using the same information about the apparel (i.e., quantity, reference number, description and purchase price) and provided those new invoices to Dream Apparel.  For years, Dream Apparel wired Kukdong directly the purchase price reflected in Relator's invoices.

21.     Starting in 2015, however, Dream Apparel fell behind in paying Relator for the apparel manufactured for it.  Defendants agreed to various payment schedules but did not keep up with payments.  By 2017, Dream Apparel's debt to Relator grew to more than $13 million.  In August 2017, Dream Apparel completely stopped paying Relator.

22.     Relator brought a civil case against Defendants in Los Angeles Superior Court to recover the money owed by Defendants.  Defendants have disclaimed any liability to Relator, claiming that SJ Mode purchased Relator's apparel and sold it to Dream Apparel and thus SJ Mode is the entity liable to Relator.  Defendants have admitted that the purchase price for the apparel supposedly purchased from SJ Mode is the same amount of money set forth in Relator's invoices.

23.     In the State Action, Defendants produced some invoices and customs forms in response to Relator's document requests.  Defendants' documents were incomplete, however, since Defendants have destroyed their business records and emails.  Relator served a deposition subpoena on Relator's customs agent in Los Angeles, Master Customs Service, that sought the production of, among other documents, all forms filed with Customs on Dream Apparel's behalf for the period of January 1, 2015 to the present

7

*Qui Tam* Complaint

and all documents relied upon to complete the forms filed with Customs.

24.     Nothing in the customs records reveals Defendants' fraudulent scheme to avoid paying customs duties.  The fraud is only revealed by comparing the invoices Defendants submitted to Customs to Relator's invoices or SJ Mode's invoices to Dream Apparel (which are nonpublic information).  Relator's invoices each bear a unique invoice number.  SJ Mode created a new invoice (or in many cases multiple invoices) that it sent to Dream Apparel with the actual purchase price.  SJ Mode also created a second false set of invoices that it sent to Dream Apparel's customs agents with a different, substantially lower value.  Both set of invoices made by SJ Mode have a different invoice number than Relator's invoices.  It is possible, however, to match up Relator's original invoices to SJ Mode's invoices using the bill of lading which identifies the pre-carriage vessel and the export vessel used and contains a general description of the goods and the number of pieces shipped.

25.     SJ Mode then transmitted the false invoices with the shipping documents provided by Relator to Master Customs Service by email.  The commercial invoices submitted to Customs are false invoices that set forth a different, significantly lower purchase price than Relator's or SJ Mode's invoices for the same apparel.  Defendants were aware of the fraudulent scheme because they received the emails sent by SJ Mode to Master Customs Service with the false invoices.

26.     Dream Apparel imported its apparel through Master Customs Service which is based in Los Angeles and Global Transportation Services, Inc. which is based in Washington.  At least in the case of Master Customs Service, the Entry Summary Forms were prepared based on the information provided by SJ Mode.  The Entry Summary Forms all list Dream Apparel as the importer of record.  Dream Apparel then paid the customs duties calculated on the basis of the false invoices.

27.     In connection with the State Action, Relator took the deposition of James

8

*Qui Tam* Complaint

Lee on November 14 and November 15, 2019 and February 14, 2020.

28.     During his deposition on November 14, 2019, Lee was shown an invoice sent by Relator to SJ Mode for order number ES24514 with the true and correct cost of $234,654.75 for 49,401 swing dresses being sold to Dream Apparel.  Lee was then shown the false invoice that was submitted to Customs which listed the value for the same goods as only $51,871.  Lee admitted that he altered the price and invoice to reduce the amount of customs duties:

> Q.  My question is: Do you now recall that Dream Apparel is responsible
>
> for the customs payments on the E.S. Sutton orders manufactured by
>
> Kukdong?
>
> A. Yes.
>
> Q. And you recall that Dream Apparel paid the custom duties, right?
>
> A. Yes.
>
> Q. Now, if we look at Exhibit 55, you'll see this is an email you're copied
>
> on.  Do you see that?
>
> A. Yes.
>
> Q. To Master Customs Service. Do you know who that is?
>
> A. Yes.
>
> Q. I presume you've also deleted this email; am I right?
>
> A. Yes.
>
> Q. You'll see the second page has a form related to a shipment? Do you
>
> see that?
>
> A. Yes.
>
> Q. And if you look at the two pages back, you'll see an invoice to Dream
>
> Apparel for this order.  So you can see the order number ES24514.  Do
>
> you see that?

A. Yes.

Q. Do you see it's for the 49,401 pieces?

A. Yes.

Q. Now if you take a look at Exhibit 53, you'll see the invoice we looked at earlier for these pieces. You see the two boxes at the top are the same? Do you see that?

A. Yes.

Q. And the caption at the top is the same? Do you see that?

A. Yes.

Q. And the order number's the same?

A. Yes.

Q. And the reference number's the same? GHM848447.  Do you see that?

A. Yes.

Q. And of course the pieces, 49,401, are the same, right?

A. Yes.

Q. And the same stamped signature on the bottom of both?

A. Yes.

Q. But do you see that the price has been changed to $51,871.05?

A. Yes.

**Q. That's customs fraud, isn't it?  You altered the price and altered the invoice to reduce the amount of the customs duties, didn't you?**

**THE WITNESS: Yes.**

11/14/19 Lee Depo. Tr. at 94:18-96:22.

29.     In Defendant Lee's deposition taken on February 14, 2020, Lee admitted that (1) the invoices submitted by Defendants to Customs do not accurately reflect the purchase price paid by Dream Apparel for the clothing being imported; and (2) Dream

*Qui Tam* Complaint

Apparel has followed the same practice of declaring a lower value than the purchase price for its imports for the last twenty years. Lee claimed that the invoices submitted by Defendants to Customs reflected the factory's cost in manufacturing the apparel. 2/14/20 Lee Depo. Tr. at 104:21-113:1. Contrary to his claim, the invoices submitted by Defendants to Customs are not the factory's invoices and appear to be completely false invoices. Excerpts from Lee's 11/14/19 and 2/14/20 deposition transcripts are attached hereto as Exhibit A. Regardless, Lee admitted that the amount Dream Apparel paid to purchase the apparel it imported is not the amount shown in the false invoice.

**137 EXAMPLES OF DEFENDANTS' FALSE CUSTOMS PRACTICE SHOWING DEFENDANTS UNDERPAID AT LEAST $5 MILLION IN CUSTOMS DUTIES IN A THREE-YEAR PERIOD**

30.     In the State Action, Relator obtained from Defendants and one of their customs agents a copy of some of the customs forms and invoices submitted by Dream Apparel to Customs in 2015, 2016 and 2017. Defendants also produced some of the invoices sent by SJ Mode to Dream Apparel that show the actual purchase price of the apparel imported. Relator has its own invoices for the apparel it sold to Defendants. These records are not the total universe of apparel imported by Defendants in 2015, 2016 and 2017 since (a) Relator did not manufacture all of the apparel imported by Defendants in those years and thus does not know the actual purchase price of the apparel manufactured and sold by other manufacturers; (b) Defendants and their customs agent did not produce a complete set of customs forms and invoices for those years; and (c) Relator does not have a complete set of customs forms and invoices submitted by Global Transportation Services, Inc. to Customs.

31.     Relator compared the customs forms and invoices Defendants submitted to Customs to Relator's and SJ Mode's invoices for the same apparel. This comparison revealed that the invoices Defendants submitted to Customs were false and did not show

11

the actual purchase price of the imported apparel.  For the apparel imported in 2015, 2016 and 2017 for which Relator has sufficient records, Defendants understated the purchase price of their imports by $18,746,571.  This amounts to an undervaluation of nearly 60%. Most of the goods Defendants imported were subject to duties of 32% of the value. Defendants cheated the United States Government out of at least $4.2 million in duties in just a three-year period.

32.    Based on Relator's own documents and the documents obtained in the State Action, the following is a list of 137 false claims made by Defendants during the years 2015, 2016 and 2017:

| FORM 7501 ENTRY NO. (BATES NO.) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (BATES NO.) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (BATES NO.) |
|---|---|---|---|---|---|
| DE0-0114462-0 (MC000008) | 1/12/15 | SJ14-INV-1293 (MC000010) | $5,616 | $10,951.20 | SG1412076 (Kukdong03732) |
| DE0-0114431-5 (MC000021) | 1/12/15 | SJ14-INV-1292 (MC000022) | $38,552 | $102,522.10 | HSD14-12-097 (Kukdong03726) |
| DE0-0114518-9 (MC000027) | 1/20/15 | SJ14-INV-1295 (MC000028) | $22,008 | $49,452.00 | SG1412122 (Kukdong03741) |
| DE0-0114706-0 (MC000057) | 2/9/15 | SJ15-INV-191 (MC000058) | $190,858 | $467,245.80 | SG1501046 (Kukdong03753) |
| DE0-0114769-8 (MC000069) | 2/16/15 | SJ15-INV-193 (MC000070) | $148,138 | $363,405.00 | SG1501087 (Kukdong03759-03760) |

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| DE0-0114825-8 (*MC000081*) | 2/23/15 | SJ15-INV-194 (*MC000082*) | $114,682 | $280,535.40 | SG1501141 (*Kukdong03767*) |
| DE0-0114926-4 (*MC000093*) | 3/4/15 | SJ15-INV-196 (*MC000094*) | $26,294 | $64,864.80 | SG1501181 (*Kukdong03776*) |
| DE0-0115013-0 (*MC000099*) | 3/7/15 | SJ15-INV-195 (*MC000100*) | $103,882 | $253,211.40 | SG1501178 (*Kukdong03773*) |
| DE0-0115030-4 (*MC000104*) | 3/11/15 | SJ15-INV-292 (*MC000105*) | $67,881 | $165,483.00 | SG15-02047 (*Kukdong03782*) |
| DE0-0117628-3 (*MC000399*) | 11/2/15 | 15-INV-1091 (*MC000400*) | $141,253 | $636,186.15 | SJMI15-INV-030 (*Kukdong03789*) |
| DE0-0117666-3 (*MC000405*) | 11/9/15 | 15-INV-1092 (*MC000406*) | $62,154 | $300,760.65 | SJMI15-INV-031 (*Kukdong03794*) |
| DE0-0117765-3 (*MC000422*) | 11/16/15 | 15-INV-1093 (*MC000423*) | $117,788 | $545,955.90 | SJMI15-INV-032 (*Kukdong03799-03800*) |
| DE0-0117827-1 (*MC000446*) | 11/23/15 | 15-INV-1094 (*MC000449*) | $97,200 | $453,387.60 | SJMI15-INV-033 (*Kukdong03806*) |
| DE0-0117978-2 (*MC000528*) | 12/8/15 | 15-INV-1191 (*MC000529*) | $90,050 | $415,998.90 | SJMI15-INV-035 |

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| | | | | | (*Kukdong0381 1*) |
| DE0-0118001-2 (*MC000534*) | 12/14/15 | 15-INV-1192 (*MC000535*) | $35,316 | $162,943.65 | SJMI15-INV-036 (*Kukdong0381 5*) |
| DE0-0118082-2 (*MC000540*) | 12/21/15 | 15-INV-1193 (*MC000541*) | $38,070 | $176,460.75 | SJMI15-INV-037 (*Kukdong0381 8*) |
| H417035106-2 (*1060*) | 2/11/16 | 16INV191 | $171,914 | $510,039.90 | SJ16-INV-191 (*1058*) |
| H417035105-4 (*1064*) | 2/11/16 | 16INV192 | $29,981 | $125,146.80 | SJ16-INV-192 (*1062*) |
| H417035115-3 (*1068*) | 2/22/16 | 16INV193 | $97,783 | $362,938.50 | SJ16-INV-193 (*1066*) |
| H417035121-1 (*1085-1086*) | 2/22/16 | 16INV197 | $56,640 | $109,740 | SJ16-INV-197 (*1082-1083*) |
| DE0-0118682-9 (*1072*) | 2/24/16 | SJ16-INV-194 | $1,408 | $2,992 | SJ16-INV-194 (*1070*) |
| DE0-0118683-7 (*MC000614*) | 2/24/16 | SJ16-INV-195 (*MC000615*) | $1,280 | $2,702 | SJ16-INV-195 (*1074*) |
| H417035122-9 (*1081*) | 2/25/16 | 16INV196 | $50,371 | $181,821 | SJ16-INV-196 (*1078-1079*) |

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H417035123-7 (*1092*) | 2/25/16 | 16INV198 | $80,071 | $237,973.80 | SJ16-INV-198 (*1089-1090*) |
| H417035142-7 (*1106-1107*) | 3/2/16 | 16INV293 | $69,043 | $133,771.20 | SJ16-INV-293 (*1103-1104*) |
| H417035143-5 (*1110*) | 3/3/16 | 16INV294 | $34,279 | $135,008.10 | SJ16-INV-294 (*1108*) |
| H417035148-4 (*1119-1120*) | 3/3/16 | 16INV296 | $204,624 | $396,459 | SJ16-INV-296 (*1116-1117*) |
| DE0-0118822-1 (*MC000625*) | 3/7/16 | SJ16-INV-292 (*MC000626*) | $232,840 | $494,785 | SJ16-INV-292 (*1098-1099*) |
| H417035146-8 (*1124*) | 3/10/16 | 16INV297 | $62,316 | $190,899.90 | SJ16-INV-297 (*1122*) |
| H417035147-6 (*1128*) | 3/10/16 | 16INV298 | $53,957 | $198,003.60 | SJ16-INV-298 (*1126*) |
| DE0-0118843-7 (*MC000631*) | 3/11/16 | SJ16-INV-291 (*MC000632*) | $40,800 | $86,700 | SJ16-INV-291 (*1093-1094*) |
| DE0-0118814-8 (*MC000637*) | 3/14/16 | SJ16-INV-299 (*MC000638*) | $188,784 | $401,166 | SJ16-INV-299 (*1130*) |
| DE0-0118813-0 (*MC000643*) | 3/14/16 | SJ16-INV-295 (*MC000644*) | $76,096 | $161,704 | SJ16-INV-295 (*1112*) |

15

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H417035155-9 (*1044*) | 3/17/16 | 16INV2993 | $43,632 | $141,838.20 | SJ16-INV-2993 (*1042*) |
| H417035154-2 (*1040*) | 3/17/16 | 16INV2992 | $79,553 | $295,708.50 | SJ16-INV-2992 (*1038*) |
| DE0-0118905-4 (*MC000649*) | 3/21/16 | SJ16-INV-2994 (*MC000650*) | $175,168 | $372,232 | SJ16-INV-2994 (*1046*) |
| H417035158-3 (*1036-1037*) | 3/21/16 | 16INV2991 | $49,853 | $96,589.80 | SJ16-INV-2991 (*1034*) |
| DE0-0118915-3 (*MC000654*) | 3/28/16 | 16-INV-2996 (*MC000655*) | $146,815 | $453,636.90 | SJ16-INV-2996 (*1054*) |
| DE0-0118911-2 (*MC000660*) | 3/28/16 | SJ16-INV-2995 (*MC000661*) | $21,888 | $65,650.80 | SJ16-INV-2995 (*1050*) |
| DE0-0119022-7 (*MC000666*) | 4/4/16 | 16-INV-392 (*MC000667*) | $3,456 | $13,773.60 | SJ16-INV-392 (*1138*) |
| DE0-0119023-5 (*MC000673*) | 4/4/16 | SJ16-INV-391 (*MC000674*) | $19,462 | $57,573.90 | SJ16-INV-391 (*1134*) |
| DE0-0119042-5 (*MC000679-680*) | 4/11/16 | 16-INV-393 (*MC000681*) | $71,489 | $161,580.90 | SJ16-INV-393-1 (*1142*) SJ16-INV-393-2 (*1143*) |

16

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H417035180-7 (*1150*) | 4/13/16 | 16INV394 | $82,080 | $181,260 | SJ16-INV-394 (*1148*) |
| H417005040-9 (*1161*) | 4/18/16 | SJ16INV492 | $2,592 | $7,776 | SJ16-INV-492 (*1159*) |
| H417005041-7 (*1164*) | 4/21/16 | SJ16INV493 | $2,462 | $7,284.60 | SJ16-INV-493 (*1162*) |
| DE0-0119180-3 (*MC000686*) | 4/21/16 | 16-INV-395 (*MC000687*) | $88,531 | $195,506.40 | SJ16-INV-395 (*1151*) |
| DE0-0119335-3 (*MC000692*) | 5/2/16 | 16-INV-491 (*MC000693*) | $61,560 | $135,945 | SJ16-INV-491 (*1155*) |
| DE0-0119701-6 (*MC000709*) | 6/2/16 | 16-INV-591 (*MC000710*) | $104,592 | $256,620 | SJ16-INV-591-1 (*1165*) SJ16-INV-591-2 (*1166*) |
| H417035285-4 (*1175*) | 6/16/16 | 16INV595 | $270,797 | $602,890.56 | SJ16-INV-595-1 (*1171*) SJ16-INV-595-2 (*1172*) |
| H417035300-1 (*1182*) | 6/27/16 | 16INV596 | $161,894 | $399,262.80 | SJ16-INV-596-1 (*1177*) |

17

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| | | | | | SJ16-INV-596-2 (*1178*) SJ16-INV-596-3 (*1179*) |
| H417035321-7 (*1190*) | 6/29/16 | 16INV596-3 | $203,827 | $501,046.80 | SJ16-INV-596-3A1 (*1184-1185*) SJ16-INV-596-3A2 (*1186*) SJ16-INV-596-3B (*1187*) SJ16-INV-596-3C (*1188*) |
| DE0-0120071-1 (*MC000808*) | 7/8/16 | 16-INV-691 (*MC000809*) | $167,736 | $417,925.20 | SJ16-INV-691-1A (*1191*) SJ16-INV-691-1B (*1192*) SJ16-INV-691-2A (*1193-1194*) SJ16-INV-691-2B (*1195*) |

18

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| | | | | | SJ16-INV-691-3A (*1196-1197*) SJ16-INV-691-3B (*1198*) |
| H417035348-0 (*1210*) | 7/15/16 | 16INV693 | $311,616 | $808,869.60 | SJ16-INV-693-1 (*1203*) SJ16-INV-693-2 (*1204-1205*) SJ16-INV-693-3 (*1206*) SJ16-INV-693-4 (*1207*) |
| DE0-0120220-4 (*MC000830*) | 7/21/16 | 16-INV-791 (*MC000832*) | $3,571 | $8,971.20 | SJ16-INV-791 (*1217*) |
| DE0-0120236-0 (*MC000842*) | 7/25/16 | 16-INV-694 (*MC000844*) | $184,728 | $471,210 | SJ16-INV-694-1 (*1211*) SJ16-INV-694-2 (*1212*) |
| H417035376-1 (*1228*) | 7/27/16 | 16INV792 | $206,275 | $519,146.40 | SJ16-INV-792-1 (*1222-1223*) |

19

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| | | | | | SJ16-INV-792-2 (*1224*) SJ16-INV-792-3 (*1225*) |
| DE0-0120469-7 (*MC000860*) | 8/11/16 | 16-INV-891 (*MC000862*) | $3,269 | $15,696 | SJ16-INV-891 (*1229*) |
| DE0-0120539-7 (*MC000885*) | 8/19/16 | 16-INV-892 (*MC000887*) | $734 | $3,280.32 | SJ16-INV-892 (*1234*) |
| H412574864-4 (*1242-1243*) | 9/23/16 | 16-INV-894 | $236,472 | $663,833.76 | SJ16-INV-894 (*1239-1240*) |
| DE0-0120987-8 (*MC000947-948*) | 9/30/16 | 16-INV-971 (*MC000950*) | $131,640 | $377,948.40 | SJ16-INV-971 (*1245*) |
| DE0-0120986-0 (*MC000940-941*) | 9/30/16 | 16-INV-972 (*MC000943*) | $130,920 | $359,440.32 | SJ16-INV-972 (*1251*) |
| H412575187-9 (*1260-1261*) | 10/6/16 | INV973 | $164,688 | $449,081.28 | SJ16-INV-973 (*1257*) |
| H412575634-0 (*1003-1004*) | 10/28/16 | SJMI-INV-1091 | $87,216 | $238,108.80 | SJ16-INV-1091 (*1000*) |
| DE0-0121365-6 | 11/3/16 | 16-INV-1092 (*MC001016*) | $152,496 | $341,901 | SJ16-INV-1092 |

20

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| (*MC001014*) | | | | | (*1006*) SJ16-INV-1093 (*1007*) |
| DE0-0121333-4 (*MC001021*) | 11/4/16 | 16-INV-1082 (*MC001023*) | $1,248 | $3,400.80 | SJ16-INV-1082 (*1263*) |
| DE0-0121402-7 (*MC001027*) | 11/10/16 | 16-INV-1095 (*MC001029*) | $173,352 | $382,265.40 | SJ16-INV-1095 SJ16-INV-1096 (*1012-1013*) |
| H412576018-5 (*1022*) | 11/16/16 | 16-INV-1097 | $166,776 | $365,174.40 | SJ16-INV-1097 (*1018*) SJ16-INV-1098 (*1019*) |
| H412576167-0 (*1271*) | 11/28/16 | 16-INV-1083 | $118,848 | $249,666.00 | SJ16-INV-1083 (*1268*) |
| DE0-0121622-0 (*MC001128*) | 11/29/16 | 16-INV-1192 (*MC001130*) | $2,472 | $5,191.20 | SJ16-INV-1192 (*1029*) |
| H412576292-6 (*1027*) | 12/1/16 | 16-INV-1191 | $12,096 | $25,401.60 | SJ16-INV-1191 (*1024*) |
| H412577405-3 (*1558*) | 1/26/17 | 17INV191 | $134,615 | $464,577.75 | SJ17-INV-191 (*1555*) |

21

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H412577406-1 (*1553*) | 1/26/17 | 17INV192 | $64,748 | $224,332.50 | SJ17-PINV-192 (*1548-1550*) |
| H412577558-9 (*1546*) | 2/2/17 | 17INV193 | $90,644 | $319,223.40 | SJ17-INV-193 (*1543*) |
| H412577714-8 (*1540-1541*) | 2/9/17 | 17-INV-194 | $156,870 | $506,859.00 | SJ17-INV-194-1 (*1537*) SJ17-INV-194-2 (*1538*) |
| H412577715-5 (*1534-1535*) | 2/9/17 | 17-INV-195 | $135,456 | $444,030.30 | SJ17-INV-195-1 (*1531*) SJ17-INV-195-2 (*1532*) |
| H412577716-3 (*1528-1529*) | 2/9/17 | 17-INV-196 | $25,162 | $89,941.20 | SJ17-INV-196-1 (*1524*) SJ17-INV-196-2 (*1525-1526*) |
| DE0-0122411-7 (*MC001183-84*) | 2/27/17 | 17-INV-197 (*MC001186*) | $118,894 | $389,808.60 | SJ17-INV-197-1 (*1518*) SJ17-INV-197-2 (*1519*) |

22

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| DE0-0122410-9 (*MC001176-77*) | 2/27/17 | 17-INV-198 (*MC001179*) | $91,615 | $291,930.60 | SJ17-INV-198-1 (*1512*) SJ17-INV-198-2 (*1513*) |
| DE0-0122461-2 (*MC001191-92*) | 3/6/17 | 17-INV-199 (*MC001193*) | $64,537 | $210,991.20 | SJ17-INV-199-1 (*1505*) SJ17-INV-199-2 (*1506-1507*) |
| DE0-0122578-3 (*MC001197*) | 3/23/17 | 17-INV-251 (*MC001199*) | $8,669 | $38,390.40 | SJ17-INV-251 (*1501*) |
| DE0-0122826-6 (*MC001203*) | 4/11/17 | 17-INV-452 (*MC001205*) | $2,058 | $5,448.80 | SJ17-INV-452 (*1482*) |
| DE0-0122960-3 (*MC001209*) | 4/25/17 | 17-INV-456 (*MC001211*) | $1,058 | $2,570.40 | SJ17-INV-456 (*1451*) |
| H412579094-3 (*1499*) | 5/8/17 | 17-INV-351-1 | $114,610 | $303,442.56 | SJ17-INV-351-1 (*1495-1496*) |
| H412579186-7 (*1480*) | 5/8/17 | 17-INV-453 | $96,310 | $254,992.72 | SJ17-INV-453 (*1476-1477*) |
| DE0-0123145-0 (*MC001215-16*) | 5/15/17 | 17-INV-455 (*MC001218*) | $59,686 | $145,823.40 | SJ17-INV-455-1 (*1462*) |

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| | | | | | SJ17-INV-455-2 (*1463*) |
| H412579331-9 (*1474*) | 5/15/17 | 17-INV-454 | $101,749 | $270,098.72 | SJ17-INV-454-1 (*1469-1471*) SJ17-INV-454-2 (*1472*) |
| DE0-0123189-8 (*MC001222*) | 5/22/17 | 17-INV-455-1-1 (*MC001224*) | $96,718 | $234,885.60 | SJ17-INV-455-1-1 (*1456-1457*) |
| H412579512-4 (*1493*) | 5/22/17 | 17-INV-351-1-1 | $68,002 | $180,043.92 | SJ17-INV-351-1-1 (*1489-1490*) |
| H412579678-3 (*1429-1430*) | 5/29/17 | 17INV556 | $70,370 | $168,385.44 | SJ17-INV-556 (*1425*) SJ17-INV-351-1-2 (*1426-1427*) |
| DE0-0123242-5 (*MC001237*) | 5/29/17 | 17-INV-457 (*MC001239*) | $72,047 | $213,138.45 | SJ17-INV-457 (*1447*) |
| DE0-0123241-7 (*MC001228-29*) | 5/29/17 | 17-INV-551 (*MC001231*) | $132,395 | $480,391.50 | SJ17-INV-551 (*1439*) SJ17-INV-455-2-1 (*1440-1441*) SJ17-INV-454-1-1 (*1442*) |

24

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H412579674-2 (*1437*) | 5/29/17 | 17INV552 | $168,276 | $441,165.90 | SJ17-INV-552 (*1432*) SJ17-INV-553 (*1433*) SJ17-INV-554 (*1434*) SJ17-INV-555 (*1435*) |
| DE0-0123304-3 (*MC001243*) | 6/5/17 | 17-INV-557 (*MC001245*) | $74,272 | $220,025.43 | SJ17-INV-557 (*1418-1419*) SJ17-INV-558 (*1420*) |
| DE0-0123397-7 (*MC001250*) | 6/11/17 | 17-INV-570-2 (*MC001251*) | $55,426 | $163,967.40 | SJ17-INV-570-2 (*1393*) |
| DE0-0123417-3 (*MC001263*) | 6/12/17 | 17-INV-565 (*MC001264*) | $51,871 | $234,654.75 | SJ17-INV-565 (*1403*) |
| DE0-0123438-9 (*MC001269*) | 6/12/17 | 17-INV-570-1 (*MC001270*) | $53,156 | $240,468.75 | SJ17-INV-570-1 (*1398*) |
| H412579966-2 (*1391*) | 6/12/17 | 17-INV-570-3A | $100,338 | $217,903.50 | SJ17-INV-570-3A (*1386*) SJ17-INV-570-4A (*1387*) SJ17-INV-571 (*1388*) |
| H412579803-7 | 6/12/17 | 17-INV-559 | $185,184 | $402,746.94 | SJ17-INV-559 (*1408*) |

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| (*1416*) | | | | | SJ17-INV-560 (*1409*) SJ17-INV-561 (*1410*) SJ17-INV-562 (*1411*) SJ17-INV-563 (*1412*) SJ17-INV-564 (*1413*) |
| DE0-0123474-4 (*MC001255*) | 6/18/17 | 17-INV-570-5 (*MC001257*) | $16,373 | $48,436.20 | SJ17-INV-570-5 (*1381*) |
| H412580115-3 (*1379*) | 6/19/17 | 17INV572 | $125,100 | $273,451.80 | SJ17-INV-572 (*1374*) SJ17-INV-573 (*1375*) SJ17-INV-574 (*1376*) SJ17-INV-575 (*1377*) |
| H412012801-6 (*1356*) | 6/20/17 | INV-653 | $19,883 | $60,595.20 | SJ17-INV-653 (*1353*) |
| H412012804-0 (*1346*) | 6/21/17 | 17-INV-655 | $19,883 | $60,595.20 | SJ17-INV-655 (*1343*) |
| H412012805-7 (*1351*) | 6/30/17 | 17-INV-654 | $19,883 | $60,595.20 | SJ17-INV-654 (*1348*) |

26

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H412580263-1 (*1372*) | 7/3/17 | 17INV576 | $27,240 | $61,320.00 | SJ17-INV-576 (*1368*) SJ17-INV-577 (*1369*) |
| H412012824-8 (*1336*) | 7/3/17 | 17INV657 | $19,883 | $60,595.20 | SJ17-INV-657 (*1333*) |
| H412012823-0 (*1331*) | 7/3/17 | 17INV658 | $19,883 | $60,595.20 | SJ17-INV-658 (*1328*) |
| H412012828-9 (*1326*) | 7/3/17 | 17INV659 | $8,240 | $25,113.60 | SJ17-INV-659 (*1323*) |
| H412012844-6 (1311) | 7/10/17 | 17INV753 | $23,738 | $72,345.60 | SJ17-INV-753 (*1308*) |
| H412012842-0 (*1306*) | 7/10/17 | 17INV754 | $23,738 | $72,345.60 | SJ17-INV-754 (*1303*) |
| H412012841-2 (*1301*) | 7/12/17 | 17INV755 | $19,883 | $60,595.20 | SJ17-INV-755 (*1298*) |
| H412012843-8 (*1296*) | 7/12/17 | 17INV756 | $27,607 | $84,134.40 | SJ17-INV-756 (*1293*) |
| H412580687-1 (*1341*) | 7/17/17 | 17INV656 | $74,668 | $316,448.40 | SJ17-INV-656 (*1338*) |
| H412580521-2 (*1366*) | 7/17/17 | 17INV651 | $65,192 | $276,291.60 | SJ17-INV-651 (*1363*) |

27

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H412580522-0 (*1361*) | 7/17/17 | 17INV652 | $22,037 | $93,435 | SJ17-INV-652 (*1358*) |
| H412012848-7 (*1291*) | 7/17/17 | 17-INV-757 | $42,008 | $128,025.60 | SJ17-INV-757 (*1288*) |
| H412012855-2 (*1578*) | 7/20/17 | 17-INV-761 | $6,363 | $26,967 | SJ17-INV-761 (*1575*) |
| H412012861-0 (*1281*) | 7/21/17 | 17-INV-759 | $11,894 | $50,409.60 | SJ17-INV-759 (*1278*) |
| H412012859-4 (*1276*) | 7/24/17 | 17INV760 | $11,894 | $52,108.80 | SJ17-INV-760 (*1273*) |
| H412012858-6 (*1588*) | 7/25/17 | 17-INV-763 | $10,219 | $31,142.40 | SJ17-INV-763 (*1585*) |
| H412580743-2 (*1321*) | 7/31/17 | 17-INV-751 | $49,190 | $208,473.60 | SJ17-INV-751 (*1318*) |
| H412012849-5 (*1286*) | 8/1/17 | 17-INV-758 | $42,008 | $128,025.60 | SJ17-INV-758 (*1283*) |
| DE0-0123919-8 (*MC001274*) | 8/3/17 | 17-INV-766 (*MC001276*) | $1,264 | $3,738.15 | SJ17-INV-766 (*1600*) |
| H412581113-7 (*1316*) | 8/3/17 | 17-INV-752 | $39,892 | $169,064.40 | SJ17-INV-752 (*1313*) |

28

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| H412581263-0 (*1583*) | 8/21/17 | 17-INV-762 | $36,855 | $156,195 | SJ17-INV-762 (*1580*) |
| DE0-0124103-8 (*MC001286*) | 8/21/17 | 17-INV-764 (*MC001288*) | $5,746 | $16,997.40 | SJ17-INV-764 (*1590*) |
| DE0-0124176-4 (*MC001292*) | 8/28/17 | 17-INV-765 (*MC001293*) | $6,156 | $18,211.50 | SJ17-INV-765 (*1595*) |
| DE0-0124344-8 (*1608*) | 9/11/17 | 17-INV-852 | $66,010 | $286,041.60 | SJ17-INV-852 (*1605*) |
| H412582882-6 (*1613*) | 10/12/17 | 17INV853 | $78,142 | $330,890.40 | SJ17-INV-853 (*1610-1611*) |
| DE0-0124764-7 (*1623*) | 10/19/17 | 17-INV-1051 | $11,520 | $53,760 | SJ17-INV-1051 (*1620*) |
| DE0-0124773-8 (*1573*) | 10/23/17 | 17-INV-1056 | $13,068 | $60,984 | SJ17-INV-1056 (*1570*) |
| DE0-0124766-2 (*1633*) | 10/23/17 | 17-INV-1053 | $11,599 | $54,129.60 | SJ17-INV-1053 (*1630*) |
| DE0-0124774-6 (*1568*) | 10/25/17 | 17-INV-1057 | $13,068 | $60,984 | SJ17-INV-1057 (*1565*) |
| DE0-0124752-2 (*1618*) | 10/23/17 | 17-INV-951 | $8,849 | $36,981.60 | SJ17-INV-951 (*1615*) |

29

*Qui Tam* Complaint

| FORM 7501 ENTRY NO. (*BATES NO.*) | ENTRY DATE | INVOICE NO. LISTED ON CUSTOMS FORM (*BATES NO.*) | FALSE VALUE OF GOODS REPORTED ON CUSTOMS FORM | REAL VALUE OF GOODS SOLD TO DREAM APPAREL | INVOICE NO. WITH REAL VALUE OF GOODS (*BATES NO.*) |
|---|---|---|---|---|---|
| DE0-0124765-4 (*1628*) | 10/24/17 | 17-INV-1052 | $11,520 | $53,760 | SJ17-INV-1052 (*1625*) |
| DE0-0124771-2 (*1638*) | 10/24/17 | 17-INV-1054 | $13,068 | $60,984 | SJ17-INV-1054 (*1635*) |
| DE0-0124772-0 (*1643*) | 10/26/17 | 17-INV-1055 | $13,068 | $60,984 | SJ17-INV-1055 (*1640*) |
| DE0-0124783-7 (*1563*) | 10/26/17 | 17-INV-1058 | $12,485 | $58,262.40 | SJ17-INV-1058 (*1560*) |
| **TOTAL** | | | **$10,041,586** | **$28,788,157** | |

The 137 CBP 7501 forms referenced in the chart are attached hereto as Exhibit B. To the extent that Defendants or their agents have produced a copy of the false invoice referenced on the Form 7501, Relator has attached those false invoices hereto as Exhibit C. The invoices that show the real value of goods sold to Dream Apparel are attached hereto as Exhibit D.

## FIRST CAUSE OF ACTION

### (Concealment of Obligation to Pay Statutory Duties – Against All Defendants)

33.     Relator realleges and incorporates by this reference the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34.     The FCA imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and

30

improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

35.    Defendants falsely undervalued Dream Apparel's imports of apparel that are subject to customs duties in order to avoid and conceal Dream Apparel's obligation to pay the full statutory duties imposed on those imports.

36.    Defendants' conduct violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial factor in causing the United States to suffer damages in an amount not less than $4.2 million according to proof.

## SECOND CAUSE OF ACTION

**(Conspiracy to Avoid Obligation to Pay Statutory Duties – Against All Defendants)**

37.    Relator realleges and incorporates by this reference the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

38.    The FCA imposes liability on any person who "conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)." 31 U.S.C. § 3729(a)(1)(C).

39.    Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) conspired to commit violations of subparagraph (G) of 31 U.S.C. § 3729.

40.    Defendants conspired to falsely undervalue Dream Apparel's imports of apparel that are subject to customs duties and avoid Dream Apparel's obligation to pay the full statutory duties imposed on those imports.

41.    Defendants' conduct violated 31 U.S.C. § 3729(a)(1)(C) and was a substantial factor in causing the United States to suffer damages in an amount not less than $4.2 million according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, by and through Relator Kukdong, demand and pray that judgment be entered in their favor and against Defendants as follows:

1.    For civil penalties to be imposed for each and every false claim;

31

_Qui Tam_ Complaint

2.   For treble the amount of the United States' damages;

3.   For pre- and post-judgment interest;

4.   For reasonable attorneys' fees, costs and expenses incurred in bringing this case; and

5.   That *Qui Tam* Plaintiff be awarded the maximum percentage of any recovery allowed to it pursuant to the False Claims Act.

Respectfully submitted,

Dated:  February 25, 2020                    VALLE MAKOFF LLP

                                             By: _____
                                                 Katherine Balatbat
                                                 Attorney for Plaintiff/Relator Kukdong
                                                 Corp.

## DEMAND FOR JURY TRIAL

Plaintiff/Relator Kukdong demands that this case be tried before a jury.

Dated:  February 25, 2020                    VALLE MAKOFF LLP

                                             By: _____
                                                 Katherine Balatbat
                                                 Attorney for Plaintiff/Relator Kukdong
                                                 Corp.

32

*Qui Tam* Complaint

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                 IN AND FOR THE COUNTY OF LOS ANGELES

 3                          CENTRAL DISTRICT

 4

 5   KUKDONG CORP., a Korean        )

 6   corporation,                   )

 7              Plaintiff           )

 8              vs.                 ) Case No.

 9   DREAM APPAREL, INC., a         ) BC692829

10   California corporation; JAMES )

11   J. LEE, an individual; and     )

12   DOES 1 through 20,             )

13              Defendants          )

     _____)

14

15                  DEPOSITION OF JAMES LEE

16                   Los Angeles, California

17                 Thursday, November 14, 2019

18                         Volume 1

19

20   Reported by:

21   JOANNE M. FARRELL, RPR, CRR

22   CSR Nos. 4838(CA)  506(HI)  507(NM)

23   JOB No. 3659549

24

25   PAGES 1 - 130
```

Page 1

EXHIBIT A
33

```
1          MR. BLOOM:  Yes, it is proper.  He can talk to
2     his lawyer whenever he wants to.
3          MR. VALLE:  Let the record reflect that the
4     witness is talking to his lawyer while a question is
5     pending.
6          MR. BLOOM:  All he said was let's talk outside,
7     so that doesn't go to anything on the merits.  But,
8     anyway.
9          MR. VALLE:  I have no idea.
10          MR. BLOOM:  Let's go outside.
11               (Recess taken at 3:06 p.m.)
12             (Proceedings resumed at 3:30 p.m.)
13          MR. VALLE:  Let's go back on the record.
14     BY MR. VALLE:
15     Q.  Mr. Lee, do you now recall that Dream Apparel is
16     responsible for the customs duty payments?
17     A.  The term is LDP.  The term is LDP.
18     Q.  My question is:  Do you now recall that Dream
19     Apparel is responsible for the customs payments on the
20     E.S. Sutton orders manufactured by Kukdong?
21     A.  Yes.
22     Q.  And you recall that Dream Apparel paid the
23     custom duties, right?
24     A.  Yes.
25     Q.  Now, if we look at Exhibit 55, you'll see this
```

Page 94

1   is an email you're copied on.

2          Do you see that?

3      A.  Yes.

4      Q.  To Master Customs Service.  Do you know who that

5   is?

6      A.  Yes.

7      Q.  I presume you've also deleted this email; am I

8   right?

9      A.  Yes.

10     Q.  You'll see the second page has a form related to

11  a shipment?  Do you see that?

12     A.  Yes.

13     Q.  And if you look at the two pages back, you'll

14  see an invoice to Dream Apparel for this order.  So you

15  can see the order number ES24514.

16         Do you see that?

17     A.  Yes.

18     Q.  Do you see it's for the 49,401 pieces?

19     A.  Yes.

20     Q.  Now if you take a look at Exhibit 53, you'll see

21  the invoice we looked at earlier for these pieces.  You

22  see the two boxes at the top are the same?

23         Do you see that?

24     A.  Yes.

25     Q.  And the caption at the top is the same?  Do you

Veritext Legal Solutions
866 299-5127

1   see that?

2       A.   Yes.

3       Q.   And the order number's the same?

4       A.   Yes.

5       Q.   And the reference number's the same?  GHM848447.

6            Do you see that?

7       A.   Yes.

8       Q.   And of course the pieces, 49,401, are the same,

9   right?

10      A.   Yes.

11      Q.   And the same stamped signature on the bottom of

12  both?

13      A.   Yes.

14      Q.   But do you see that the price has been changed

15  to $51,871.05?

16      A.   Yes.

17      Q.   That's customs fraud, isn't it?  You altered the

18  price and altered the invoice to reduce the amount of the

19  customs duties, didn't you?

20           MR. BLOOM:  Objection.  Calls for legal opinion.

21           You can answer, if you can.

22           THE WITNESS:  Yes.

23  BY MR. VALLE:

24      Q.   And, in fact, by altering the invoice, reducing

25  the price falsely, you reduced the custom duty by four or

Page 96

EXHIBIT A
36

1          I, the undersigned, a Certified Shorthand Reporter

2     of the State of California, do hereby certify:

3          That the foregoing proceedings were taken before me

4     at the time and place herein set forth; that any

5     witnesses in the foregoing proceedings, prior to

6     testifying, were administered an oath; that a record of

7     the proceedings was made by me using machine shorthand

8     which was thereafter transcribed under my direction; that

9     the foregoing transcript is a true record of the

10    testimony given.

11         I further certify I am neither financially

12    interested in the action nor a relative or employee of

13    any attorney or any party to this action.

14         IN WITNESS WHEREOF, I have this date subscribed my

15    name.

16         Dated:  November 18, 2019

17

18

19

20         _Joanne M. Farrell_

21         Joanne M. Farrell, CSR No. 4838

22

23

24

25

Veritext Legal Solutions
866 299-5127

EXHIBIT A
37

<pre>
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2               COUNTY OF LOS ANGELES, CENTRAL DISTRICT
 3
      _____
 4    KUKDONG CORP., a Korean              )
      corporation,                         )
 5                                         )
                   Plaintiff,              )
 6                                         )
          vs.                              )  Case No.
 7                                         )  BC692829
      DREAM APPAREL, INC., a               )
 8    California corporation; JAMES J.     )
      LEE, an individual; and DOES 1       )
 9    through 20,                          )
                                           )
10                 Defendants.             )
      _____  )
11    DREAM APPAREL, INC., a               )
      California corporation,              )
12                                         )
                   Cross-Complainant,      )
13                                         )
          vs.                              )
14                                         )
      KUKDONG CORP., a Korean              )
15    corporation; and ROES 1 through      )
      10,                                  )
16                                         )
                   Cross-Defendants.       )
17    _____  )
18
19
20                   DEPOSITION OF JAMES LEE
21                 Friday, February 14, 2020
22
23    Reported By:
      DEBORAH KINSELLA
24    CSR No. 13808
      Job No. 3983155
25    Pages 1 to 132
</pre>

Page 1

EXHIBIT A
38

1    invoice.

2        Q   You're correct.  But if Exhibit 95 is what

3    Dream Apparel owes to SJ Mode, shouldn't the accounting

4    between SJ Mode and Dream Apparel reflect the amount

5    that that Dream Apparel actually owes SJ Mode?

6        A   That's the calculation method between SJ Mode

7    and Dream Apparel.

8        Q   So the accounting method between Dream Apparel

9    and SJ Mode is to list the wrong amount?  Is that what

10   you're saying?

11       A   No.

12       Q   Well, you agree with me, don't you, that Dream

13   Apparel doesn't owe SJ Mode $131,640?

14       A   Exhibit 94 is an invoice for 94.  95 is for 95.

15          MR. BLOOM:  Maybe I could have a second with

16   him outside.

17          MS. BALATBAT:  No.  We're actually going to

18   continue with this line of questioning right now.  I

19   would object strenuously to you taking a break right

20   now.

21       Q   Mr. Lee, when Dream Apparel is filling out the

22   customs forms and declaring under penalty of perjury to

23   the U.S. government that the value of the goods it is

24   importing, which number should it use?  Should it use

25   the number listed in Exhibit 95, or should it use the

                                            Page 104

1     number listed in Exhibit 94?

2          A    Using one in 94.

3          Q    And why should it use the lower number that's

4     in Exhibit 94?

5          A    From the factory, because we're paying for the

6     money for cost to manufacture at this factory.   So

7     paying for 94.

8          Q    That's directly opposite of what you just said.

9     You said that Dream Apparel, what it has to pay for the

10    goods, is reflected in Exhibit 95; isn't that right?

11         A    What I said earlier was Dream Apparel paying to

12    SJ Mode would be reflected in 95.

13         Q    Right.   And you agree with me that Dream

14    Apparel is the importer of record?

15         A    Yes.

16         Q    And so the customs form should show the cost to

17    Dream Apparel, the importer of record; isn't that right?

18         A    Yes.

19         Q    The customs form isn't supposed to show what SJ

20    Mode pays for the goods, is it?

21         A    I don't know about that.

22         Q    It's not supposed to show what the factory pays

23    to have the goods manufactured, is it, Mr. Lee?

24         A    It varies.   That's a difference of point.

25         Q    You agree?

Veritext Legal Solutions
866 299-5127

1          A    Per company.

2          Q    You agree with me that the factory's cost for

3    manufacturing goods is lower than what it charges who it

4    sells its goods to, its buyer?

5          A    Yes.

6          Q    That's how a factory makes money; right?

7          A    No, that has nothing to do with it.  This price

8    will be -- may be fully sufficient price for the

9    factory, yes, or maybe it's not.

10         Q    I see your point.  Maybe the factory isn't

11   having enough of a margin, and maybe they're not making

12   money.  Is that your point?

13         A    No matter what the price is, we would not know

14   how much of a margin the factory is making from this.

15         Q    But you agree with me that the customs form

16   that Dream Apparel submits to the U.S. Customs Bureau

17   should reflect the price on Exhibit 95.  That's right?

18         A    That's a difference of opinion.

19         Q    No.  I mean you agreed with me just a minute

20   ago that Dream Apparel is the importer of record and

21   should be listing on its customs form the amount it pays

22   to purchase the goods from SJ Mode.

23         A    What I'm saying is what's been indicated in

24   Exhibit 94, the amount of money reflected there is the

25   cost that's been incurred by the factory to manufacture

Veritext Legal Solutions
866 299-5127

1    this.   And this is the cost that I have to pay.

2         Q    No, that's not right.   You said that the cost

3    you have to pay is reflected in Exhibit 95.

4         A    From Dream Apparel to SJ Mode, that's the SJ

5    Mode invoice that Dream Apparel has to pay.

6         Q    Is Exhibit 95.

7         A    Yes.   And also invoice 94, it's the factory.

8    And this is a cost in order to manufacture the goods.

9    That's 94.

10        Q    Correct.   But the value of goods that Dream

11   Apparel is importing is reflected in Exhibit 95; isn't

12   that right?

13        A    Yes, 95 is the amount of money that's been

14   reflected, which is the Dream Apparel has to pay SJ Mode

15   for the goods.   And also the Dream Apparel that has to

16   pay the factory for the cost of goods manufactured is

17   under 94 [sic].

18        Q    So you're claiming that Dream Apparel pays the

19   factory under Exhibit 94?

20        A    Yes, that's the invoice created from the

21   factory.

22        Q    Correct.   But who pays Exhibit 94?   That's not

23   Dream Apparel.

24        A    Well, ultimately Dream Apparel is the one who

25   has to pay.

Page 107

**EXHIBIT A**
**42**

1    Q    Mr. Lee, your entire case is premised on the

2  claim that Dream Apparel pays SJ Mode, not the factory,

3  not Kukdong.   So is Dream Apparel supposed to pay under

4  Exhibit 94 or under Exhibit 95?

5    A    94 is -- it's an invoice that's been created

6  from the factory indicating their cost.   No. 95 is SJ

7  Mode invoice that's created by SJ Mode for this invoiced

8  amount.

9    Q    And who is supposed to pay under Exhibit 95?

10    A    Dream Apparel has to pay.

11    Q    Correct.   And Exhibit 95 shows the cost of

12  goods to Dream Apparel for the goods it's supposedly

13  purchasing from SJ Mode.

14    A    94 is the invoice created from the factory.

15  And 94 is the cost that's been requested for payment for

16  the cost of goods manufactured.   That's 94.

17    Q    But 94 isn't the cost to you to Dream Apparel?

18    A    Right.   95 invoice is -- this is amount of

19  money that Dream Apparel has to pay SJ Mode, and that's

20  what this invoiced amount is reflected in 95.

21       MS. BALATBAT:   I'm going to mark Exhibit 96.

22      (Exhibit 96 was marked for identification.)

23  BY MS. BALATBAT:

24    Q    The court reporter has handed you a document

25  that we've marked as Exhibit 96.   It bears the Bates

Page 108

1    stamp MC000947.

2         Do you recognize this document?

3    A    Yes.

4    Q    And what is it?

5    A    This is a customs clearance application form

6    for invoice 971.

7    Q    And who is listed as the importer of record on

8    Exhibit 96, Mr. Lee?

9    A    It says Dream Apparel.

10   Q    And if you look under box 35 which says "Total

11   Entered Value," you'll see that the value is $131,640.

12   And that's the amount reflected in Exhibit 94; is that

13   right?

14   A    Yes.

15   Q    But that's not the cost of goods to Dream

16   Apparel.  You agree with me; correct?

17   A    That's difference of opinion.  This is what

18   we're thinking.

19   Q    Well, aren't you thinking, "I want to tell the

20   federal government that the goods reflected in Exhibit

21   94, 95, and 96 are only worth 131,640" when in fact what

22   you have to pay for them is $377,948.40?

23   A    Our belief was that we only need to pay for the

24   amount of money that's been issued from the factory.

25   Q    So your understanding of what you owe the U.S.

Veritext Legal Solutions
866 299-5127

1   Customs is not what you paid for the goods, but what the

2   manufacturer paid to make those goods; is that right?

3        A    Yes.

4        Q    And what is your understanding based on,

5   Mr. Lee?

6        A    That's my knowledge.

7        Q    And to your knowledge have you always followed

8   that practice, meaning for the goods that Dream Apparel

9   has imported for the last 20 years, the value of the

10  goods that you're declaring to the federal government is

11  not the amount that you've paid to get those goods, but

12  it's the amount that it cost the factory to make those

13  goods?

14       A    Yes.

15       Q    And it's just a coincidence that that happened

16  to save you millions and millions and millions of

17  dollars?

18            MR. BLOOM:   I object as argumentative.

19            He can answer if he can.

20            THE WITNESS:   I reported this from the invoice

21  that I got from the factory that's Exhibit 94.

22  BY MS. BALATBAT:

23       Q    But how are you getting invoices from the

24  factory, Mr. Lee?   I thought you said before that

25  Kukdong never sent you any invoices?

Veritext Legal Solutions
866 299-5127

EXHIBIT A
45

1        A    It doesn't indicate whether this was sent from

2    Kukdong.

3        Q    But what factory is sending you invoices,

4    Mr. Lee?

5        A    Here, it has the shipper's name, and then there

6    is an account name here, and then there is a custom

7    clearance paper here.  It says the name of PTSJ Mode

8    Indonesia, and there's a name Dream Apparel.  It

9    doesn't -- it does not indicate whether this document

10   has been produced to me by Kukdong here.  It doesn't

11   indicate that.

12       Q    But my question is different, Mr. Lee.  Are you

13   testifying, completely contrary to all your other

14   testimony, that Dream Apparel would receive invoices

15   from the factory?

16       A    This invoice indicates that the factory has

17   loaded the shipment of the goods.  And then custom

18   clearance was not done by me, but rather by SJ Mode.  So

19   once the SJ Mode takes care of this custom clearance,

20   and then the wire transfer request would be done

21   according to the invoice created by the factory.

22            And then when the entire amount of money has

23   been requested, then that would be based on Exhibit 95.

24   So ultimately that would be the business method that's

25   been taking care or handled between SJ Mode and Dream

Veritext Legal Solutions
866 299-5127

1    Apparel.

2         Q    The entry form that's been marked as Exhibit

3    96, you agree with me, don't you, lists Dream Apparel as

4    the importer of record, doesn't it?

5         A    Yes.

6         Q    But let's go back to my question, Mr. Lee.  Did

7    the factories ever send invoices directly to Dream

8    Apparel?

9         A    No.

10        Q    The only invoices that Dream Apparel received

11   are invoices sent by SJ Mode.  Isn't that your theory?

12        A    Yes.

13        Q    If I understood you correctly, you said that

14   you made a choice, knowingly put on the customs form as

15   the value not the cost of goods to Dream Apparel, but

16   the cost to the factory to manufacture those goods?

17        A    Between SJ Mode and Dream Apparel, the cost of

18   goods has to be paid according to the method that's been

19   reflected in Exhibit 95.

20        Q    That wasn't my question.  I thought I

21   understood you to say that you decided at some point

22   that what should go on Exhibit 96, on the entry summary

23   forms that you filled out, should be the value -- the

24   cost rather to the factory, not the cost to Dream

25   Apparel?

1      A    Correct.

2      Q    Do you know of any accounting documents that

3 would show the invoice amounts that are the correct

4 amounts that Dream Apparel owes SJ Mode under your

5 theory?

6      A    This would be the one that would show that, the

7 balance sheet.

8      Q    And you're referring to Exhibit 3?

9      A    Yes.

10      Q    But we went through this, and I showed you that

11 the amount listed on here is not the amount that Dream

12 Apparel owes SJ Mode, but rather it's the amount in the

13 second set of invoices let's just call them.

14      A    That's between SJ Mode and Dream Apparel.  It's

15 just -- it's the calculation method between the company.

16 So that may be different from some other companies.  But

17 between SJ Mode and Dream Apparel, this has been method

18 that we've been using all along.

19      Q    I agree with you, Mr. Lee, that most companies

20 don't have two sets of books.

21          Okay.  Let's look at --

22          MR. BLOOM:  Are we going on to a different

23 topic?

24          MS. BALATBAT:  Yes.

25          MR. BLOOM:  Would you mind if I talk to him for

Page 113

```
 1                    REPORTER'S CERTIFICATE

 2          I, Deborah Kinsella, Certified Shorthand

 3    Reporter certify:

 4        That the foregoing proceedings were taken before me

 5    at the time and place therein set forth, at which time

 6    the witness was put under oath by me;

 7        That the testimony of the witness, the questions

 8    propounded, and all the objections and statements made

 9    at the time of the examination were recorded

10    stenographically by me and were thereafter transcribed;

11        I further certify that I am not a relative or

12    employee of any attorney of the parties nor financially

13    interested in the action.

14        I declare under penalty of perjury under the laws

15    of California that the foregoing is true and correct.

16    Dated February 20, 2020

17

18

19

20        Deborah Kinsella

21

22

23

24

25
```

EXHIBIT A
49

Page 1
Form Approved OMB No. 1651-0022
EXP. 08-31-2014

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

**ENTRY SUMMARY**

| 1. Filer Code/Entry No. DE0-0114462-0 | 2. Entry Type 01  ABI/P | 3. Summary Date 01/22/15   204 |
|---|---|---|

| 4. Surety No. 856 | 5. Bond Type 8 | 6. Port Code 4601 | 7. Entry Date 01/12/15 |
|---|---|---|---|

| 8. Importing Carrier APL MEXICO CITY | 9. Mode of Transport 10 | 10. Country of Origin ID | 11. Import Date 01/12/15 |
|---|---|---|---|

| 12. B/L or AWB No. HDMU JTWB0314121, TL1412NY860B | 13. Manufacturer ID IDSEMGAR25SEM | 14. Exporting Country ID | 15. Export Date 12/14/14 |
|---|---|---|---|

| 16. I.T. No. | 17. I.T. Date | 18. Missing Docs | 19. Foreign Port of Lading 56033 | 20. U.S. Port of Unlading 4601 |
|---|---|---|---|---|

| 21. Location of Goods/G.O. No. F057 Voyage: 003 | 22. Consignee No. 34-199729100 | 23. Importer No. 34-199729100 | 24. Reference No. 34-199729100 |
|---|---|---|---|

| 25. Ultimate Consignee Name and Address DREAM APPAREL INC 110 E 9TH ST #A870 | 26. Importer of Record Name and Address DREAM APPAREL INC 110 E 9TH ST #A870 |
|---|---|

Destination: NY       Customer Reference # SJ14-INV-1293
City  LOS ANGELES             State  CA  Zip  90079

City  LOS ANGELES             State  CA  Zip 90079

| 27. | 28. Description of Merchandise | | | 32. A. Entered Value B. CHGS C. Relationship | 33. A. HTSUS Rate B. ADA/CVD Rate C. IRC Rate D. Visa No. | 34. Duty and I.R. Tax |
|---|---|---|---|---|---|---|
| Line No. | 29. A. HTSUS No. B. ADA/CVD No. | 30. A. Grossweight B. Manifest Qty. | 31. Net Quantity in HTSUS Units | | | Dollars       Cents |
| | | | 156 CTNS | | | |
| 001 | WOMEN SWEATER,MAN-MADE,KNI 6110.30.3020 646 | 880 KG 746.00 KG | 234.00 DOZ | $5,616 C $630 N | 32% | $1,797.12 |
| | 499 - Merchandise Processing Fee 501 - Harbor Maintenance Fee | | | | 0.3464% 0.1250% | $19.45 $7.02 |
| | Totals for Invoice SJ14-INV-1293 | Invoice Value 5,616.00 USD | | +/- MMV | Exchange 1.00000 | Entered Value 5,616.00 USD |

| Other Fee Summary for Block 39 | 35. Total Entered Value | **CBP USE ONLY** | | TOTALS |
|---|---|---|---|---|
| 499 - MPF          $25.00 501 - HMF           $7.02 | $ 5,616 | A. LIQ CODE | B. Ascertained Duty | 37. Duty $1,797.12 |
| | Total Other Fees $ 32.02 | REASON CODE | C. Ascertained Tax | 38. Tax |
| 36. DECLARATION OF IMPORTER OF RECORD (OWNER OR PURCHASER) OR AUTHORIZED AGENT | | | D. Ascertained Other | 39. Other $32.02 |
| I declare that I am the ☐ Importer of record and that the actual owner, purchaser, or consignee for CBP purposes is as shown above, OR ☒ owner | | | D. Ascertained Total | 40. Total $1,829.14 |

or purchaser or agent thereof. I further declare that the merchandise ☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoices are true, OR ☒ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoices as to value or price are true to the best of my knowledge and belief. I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed.

I will immediately furnish to the appropriate CBP officer any information showing a different statement of facts.

| 41. DECLARANT NAME                TITLE Hyesook Kwak dba Master Customs Service | SIGNATURE | DATE 01/07/15 |
|---|---|---|

| 42. Broker/Filer Information (Name, address, phone number) Hyesook Kwak dba Master Customs Service 11099 S. La Cienega Bl., Ste. 245 Los Angeles, CA 90045   310-670-8898 | 43. Broker/Importer File No. 0114462 / SJ14-INV-1293 |
|---|---|

CBP Form 7501 (06/09)

**EXHIBIT B**
50

MC000008

Record